UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADIRONDACK RADIOLOGY
ASSOCIATES, P.C.,

    Petitioner/Plaintiff,

v.                                                  CASE NO.:

INTEGRITY MEDICAL SYSTEMS, INC.,

    Respondent/Defendant.

_____/

## **COMPLAINT AND PETITION TO COMPEL ARBITRATION**

Petitioner/Plaintiff, Adirondack Radiology Associates, P.C. ("Adirondack"), by and through its undersigned attorneys, sues Respondent/Defendant, Integrity Medical Systems, Inc. ("Integrity"), and petitions the Court to compel arbitration, alleging as follows:

### **INTRODUCTION**

1. This is an action for breach of contract and fraudulent misrepresentation under the laws of the State of Florida, and to compel arbitration pursuant to a written agreement between the parties that provides for arbitration of disputes.

2. Adirondack seeks an order from this court under the Federal Arbitration Act, 9 U.S.C. §4, compelling Respondent, Integrity Medical Systems, Inc.

("Integrity") to arbitrate the dispute between the parties and staying the underlying claims for breach of contract and fraudulent misrepresentation until such arbitration has been had pursuant to the parties' agreement.

## PARTIES

3. Adirondack is a radiology and medical diagnostic imaging company that provides comprehensive radiological and imaging services to patients.

4. Adirondack is a professional corporation in good standing organized under the laws of the state of New York with its principal place of business located in Glens Falls, New York.

5. Integrity Medical Systems, Inc. is a company engaged in the sale of new, used and refurbished medical imaging equipment.

6. Integrity is a corporation in good standing organized under the laws of the state of Florida with its principal place of business located in Fort Myers, Florida.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of diverse states and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. This Court has jurisdiction over the person of the Defendant because the Defendant either resides or transacts business within this District, and the

Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure (4)(e).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Integrity is subject to the Court's personal jurisdiction and maintains its principal place of business in Fort Myers, Florida.

10. Venue is also proper in this District because, pursuant to 9 U.S.C. § 204, a party should bring a petition to compel arbitration in the District that has jurisdiction over the matter and where the parties agreed to arbitrate any disputes between them. The parties agreed that Lee County, Florida be the "venue of jurisdiction," and that the laws of the State of Florida shall govern the enforcement and interpretation of the parties' agreement and all other issues concerning the sale of medical equipment that is the subject of the parties' agreement.

## FACTS

11. On or about January 24, 2020, Adirondack entered into a purchase Agreement ("the Agreement") with Integrity Medical Systems, Inc. for the purchase and installation of a used Extremity MRI GE/ONI Optima MR430s 1.5T ("the MRI Machine") at a purchase price of $157,500.00. A copy of the Agreement is attached as **Exhibit A**[1].

---

[1] The copy of the Agreement that is attached is signed only by Adirondack. Adirondack has requested from Integrity a copy of the Agreement that has been signed by Integrity; however, Integrity has failed to provide a copy of the fully executed Agreement. As part

3

12. The Agreement stated that installation was expressly included in the equipment purchase, and the "Completion of installation" was defined as, "the moment the equipment has been installed and has produced the first diagnostic-quality phantom image."

13. On or about January 27, 2020, Adirondack made a 25% down payment to Integrity in the amount of $39,375.00.

14. On or about February 25, 2020, Adirondack made a 65% down payment to Integrity in the amount of $102,375.00.

15. On March 4, 2020, the MRI Machine arrived at Adirondack's facility in Saratoga, New York and Ralph Childs of ProScan, LLC, a person who was retained by Integrity, attempted installation but was unsuccessful.

16. On or about April 20, 2020, Adirondack made a 10% final payment to Integrity in the amount of $15,750.00.

17. Between March 2020 and June 2020, COVID-19 caused some delays in the installation of the MRI Machine, however, on September 14, 2020, Mr. Childs returned to Adirondack's facility in an attempt to complete the installation of the MRI Machine but was unsuccessful.

18. On October 26, 2020, Mr. Childs discovered that a "coldhead" in the

---

of discovery in this case, Adirondack intends to request a copy of the fully executed Agreement.

MRI Machine needed to be replaced in order for him to complete installation, and Mr. Childs reported this fact to Integrity.

19. On October 27, 2020, Integrity's CEO, David Denholtz, notified Adirondack's Practice Administrator, Lee Johnson, that Mr. Denholtz was working on the next steps with Mr. Childs.

20. On October 29, 2020, Mr. Johnson requested an update from Mr. Denholtz, and Mr. Denholtz responded that he was locating the best source for replacement of the "coldhead" and that he would get back with Mr. Johnson later that day, however, Mr. Denholtz did not get back with Mr. Johnson that day.

21. On November 3, 2020, Mr. Johnson again requested an update from Mr. Denholtz, and Mr. Denholtz responded that he located a "coldhead" and that the "compressor" may also need to be replaced.

22. On November 19, 2020, Mr. Denholtz notified Mr. Johnson that November 24, 2020 and December 1, 2020 were tentative dates for someone to go to Adirondack's facility to check-up on the "coldhead" and compressor, yet no one ever came on either of those dates.

23. After not receiving an update from Mr. Denholtz, Mr. Johnson requested updates from Mr. Denholtz on December 1, 2020 and on December 2, 2020.

5

24. On December 3, 2020, Mr. Denholtz notified Mr. Johnson that the "coldhead" was on order and he would have a shipping date the following day.

25. After not receiving an update from Mr. Denholtz, Mr. Johnson again requested updates from Mr. Denholtz on December 8, 2020, and on December 10, 2020, and on December 11, 2020 Mr. Denholtz responded that he was still waiting on the shipping information for the "coldhead".

26. On December 14, 2020, Mr. Denholtz notified Mr. Johnson that the "coldhead" was "ready to go" and could be scheduled as soon as the following day, however, Mr. Denholtz did not attempt to schedule installation of the "coldhead" the following day.

27. Between December 31, 2020 and February 4, 2021, Mr. Denholtz continued to lead Mr. Johnson to believe that he had a plan in place to replace the "coldhead" and complete installation.

28. On January 15, 2021, Mr. Childs confirmed to Mr. Johnson that the MRI Machine had never been ramped up and had failed due to "coldhead" and cryogen problems.

29. On January 18, 2021, Mr. Childs confirmed to Mr. Johnson that no first scan was ever produced that met manufacturer's specifications.

30. On February 8, 2021, Mr. Denholtz informed Mr. Johnson that Mr. Denholtz had fired Mr. Childs and retained Steve Ford through an intermediary, John Cline, who needed to perform further inspection of the MRI Machine.

31. On February 12, 2021, Mr. Ford performed an inspection on the MRI Machine, and on February 16, 2021 Mr. Ford sent a proposal to complete installation of the MRI Machine, budgeting nine (9) days of labor at a cost of $71,950.00.

32. On February 23, 2021, Mr. Denholtz informed Mr. Johnson that he had negotiated Mr. Ford's proposal to a lower amount.

33. Between February 26, 2021 and March 26, 2021, Adirondack continued its attempt to work with Integrity to complete the installation of the MRI Machine, however, Integrity failed to follow through with the installation.

34. On March 29, 2021, Adirondack obtained a proposal for the completion of installation of the MRI Machine from Mr. Childs with ProScan, LLC, at a price of $42,500.00.

35. Mr. Childs completed the installation of the MRI Machine on or about April 21, 2021.

36. On or about May 12, 2021, the MRI Machine became fully operational such that it could began scanning patients.

37. All conditions precedent to the bringing of this action, if any, have been performed and satisfied.

## COUNT I – PETITION TO COMPEL ARBITRATION

38. Adirondack realleges and incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

39. Adirondack seeks an order from this Court under the Federal Arbitration Act, 9 U.S.C. § 4, compelling Integrity to arbitrate the underlying dispute between the parties.

40. Paragraph 13 of the Agreement states:

> [t]his purchase has been transacted at the Seller's place of business located at 13831 Jetport Commerce Pkwy, Fort Myers, Florida; and as such the laws of the state of Florida, with Lee County as venue of jurisdiction, shall govern enforcement and interpretation of this Agreement and all other issues concerning the sale herein. Buyer consents to resolve disputes through a process of arbitration at Seller's discretion.

41. Paragraph 13 of the Agreement constitutes a valid arbitration agreement between the parties that requires all disputes or issues concerning the sale of the subject MRI Machine to be resolved through arbitration.

42. All of Adirondack's claims against Integrity involve the sale of the MRI Machine.

43. On March 29, 2021, after it became clear that Integrity did not wish to resolve the dispute in good faith, Adirondack's corporate counsel notified Integrity of Adirondack's intent to submit the dispute to arbitration pursuant to the Agreement.

44. On March 29, 2021, Adirondack filed a "Submission to Dispute Resolution" with the American Arbitration Association ("AAA") and paid a standard arbitration fee in the amount of $925.00.

45. On April 7, 2021 and April 14, 2021, an AAA Manager of ADR Services, Paris Wilkerson, made a request in writing for a conference call with Adirondack's corporate counsel and Mr. Denholtz, however, Mr. Denholtz failed to respond.

46. On April 13, 2021, Adirondack's corporate counsel wrote to Mr. Denholtz requesting a response to Ms. Wilkerson's request for the conference call, however, Mr. Denholtz failed to respond.

47. On April 22, 2021, Ms. Wilkerson sent a letter to Adirondack's corporate counsel and Mr. Denholtz to notify the parties that the AAA was administratively closing the file without prejudice because AAA had not received an agreement by Integrity to the administrative services of the AAA to conduct the arbitration.

48. Integrity has failed to respond to Adirondack's request for arbitration pursuant to the Agreement, has failed to respond to requests and correspondence from the AAA and has failed to participate in the process of arbitration.

49. Based on the foregoing, the Court should issue an order compelling arbitration of the dispute between the parties in accordance with the terms of the agreement between the parties.

WHEREFORE, Plaintiff, Adirondack Radiology Associates, P.C., respectfully requests this Court to issue an order compelling Respondent, Integrity Medical Systems, Inc., to arbitrate all disputes with Adirondack Radiology Associates, P.C pursuant to 9 U.S.C. §4, enforcing the arbitration clause of the Agreement entered into by the parties, and to stay the underlying claims until such arbitration has been had pursuant to the Agreement.

## COUNT II – BREACH OF CONTRACT

50. Adirondack realleges and incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

51. This is an action for breach of contract under the laws of the State of Florida.

52. The Agreement entered into between Adirondack and Integrity is a valid contract for the purchase of the MRI Machine.

53. The Agreement states in pertinent part, "installation is expressly included in the equipment purchase."

54. The Agreement further states, " 'Completion of Installation' [COI] will be defined as the moment the equipment has been installed and has produced the first diagnostic-quality phantom image."

55. The Agreement required Integrity to complete installation of the MRI Machine.

56. Integrity failed to complete installation of the MRI Machine because Integrity failed to ensure that the MRI Machine had produced the first diagnostic-quality phantom image.

57. Integrity's failure to complete installation of the MRI Machine constitutes a breach of the Agreement entered into between Adirondack and Integrity.

58. As a result of Integrity's failure to complete installation, Adirondack was forced to retain Mr. Childs with ProScan, LLC to complete installation at a cost of $42,500.00.

59. As a direct and proximate result of Integrity's failure to complete installation, Adirondack has suffered actual damages in the amount of $42,500.00 and Integrity should be held liable for Adirondack's actual damages, together with all other economic losses that may be available, including and pre and post judgment interest.

WHEREFORE, Plaintiff, Adirondack Radiology Associates, P.C., respectfully demands judgment against Integrity Medical Systems, Inc. in the amount of $42,500.00, plus pre and post judgment interest, costs, and all further relief that this Court deems just and appropriate.

### COUNT III – FRAUDULENT MISREPRESENTATION

60. Adirondack realleges and incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

61. This is an action for fraudulent misrepresentation under the laws of the State of Florida.

62. At all times relevant to the causes of action herein, Mr. Denholtz was the CEO of Integrity and was acting on behalf of Integrity in all dealings and communications with Adirondack or its agents.

63. Beginning on or before January 1, 2021, Mr. Denholtz, made representations to Adirondack or its agents that he had ordered a "coldhead" for the MRI Machine.

64. Mr. Denholtz's representations that he had ordered a "coldhead" were false.

65. Mr. Denholtz's false representations that he had ordered a "coldhead" were material because installation of the MRI Machine could not be completed without the "coldhead" being replaced.

66. At the times Mr. Denholtz represented that he had ordered a "coldhead," Mr. Denholtz knew that the representations were false.

67. Mr. Denholtz intended for Adirondack to rely on his false representations that a "coldhead" had been ordered.

68. Beginning on or before January 1, 2021, Mr. Denholtz, made representations to Adirondack or its agents that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine.

69. Mr. Denholtz's representations that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine were false.

70. Mr. Denholtz's false representations that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine were material because installation of the MRI Machine could not be completed without the "coldhead" being replaced.

71. At the times Mr. Denholtz represented that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine, Mr. Denholtz knew that the representations were false.

72. Mr. Denholtz intended for Adirondack to rely on his false representations that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine.

73. Beginning on or before January 1, 2021 until March 29, 2021, Adirondack relied on Mr. Denholtz's false representations that the "coldhead" had been ordered and Mr. Denholtz's false representations that he or Integrity would arrange for a "coldhead" to be installed in the MRI Machine.

74. In reliance on Mr. Denholtz's false representations, Adirondack held off on retaining a person or entity to replace the "coldhead," and as a result the MRI Machine was not fully operational such that it was scanning patients until May 12, 2021.

75. Integrity should have ensured that installation of the MRI Machine was complete on or before January 1, 2021.

76. As a result of Adirondack's reliance on Mr. Denholtz's false representations, Adirondack has suffered damages in excess of $175,000.00, such damages having accrued between January 1, 2021 and May 12, 2021.

WHEREFORE, Plaintiff, Adirondack Radiology Associates, P.C., respectfully demands judgment against Integrity Medical Systems, Inc., plus pre and post judgment interest, costs, and all further relief that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Adirondack Radiology Associates, P.C. demands trial by jury with respect to all claims so triable.

Dated this <u>17th</u> day of <u>June</u>, 2021.

                      Respectfully submitted,

                      <u>s/Bridgette M. Blitch</u>
                      BRIDGETTE M. BLITCH, ESQUIRE
                      Florida Bar No.: 064969
                      BLITCH WESTLEY BARRETTE, S.C.
                      9100 Conroy Windermere Road, Suite 200
                      Windermere, Florida 34786
                      Telephone: (407) 574-2835
                      Facsimile: (608) 829-2982
                      Primary: bblitch@bwesq.com
                      Secondary: mmock@bwesq.com
                      Tertiary: jsybert@bwesq.com
                      Attorneys for Plaintiff